## BEEBE & a. v. DUDLEY.

When the undertaking by a guarantor to pay is absolute, notice is unnecessary. His liability is fixed without demand or notice.

When the undertaking is collateral merely, notice must be given within a reasonable time, otherwise the guarantor will be discharged from his liability, unless he is in no way prejudiced by the want of notice.

When the party for whom the guaranty is given becomes insolvent, so that no advantage can accrue to the guarantor by being notified of the claim, notice is unnecessary.

A. gave a writing to B., by which, for value received, he guaranteed to pay B. for $2,000 worth of goods, delivered to C., when he might call for them, and it appeared that B. thereafterwards let C. have goods to the amount of $843,42, and charged the same upon his books to C., and also made out the bills of the goods to C. in his name,—*Held*, that the undertaking of A. was collateral, and that he was entitled to notice, unless it should appear that he was in no way prejudiced for want of notice,—*Held*, also, that the insolvency of the principal, within three months after giving the guaranty, and before one half of the amount was taken up, rendered it unnecessary to give any special notice of the claim, and that notice and demand, at any time before the suit, was sufficient.

ASSUMPSIT, to recover the amount of sundry bills of merchandize, delivered to one Charles P. Dudley. Plea, the general issue.

The case was committed to an auditor, who made report in substance as follows: That the defendant, on the 14th of October, 1847, executed an agreement, in writing, which was delivered to the plaintiffs, who were merchants in Boston, by Charles P. Dudley. The agreement was as follows:

" For value received, I, Moses Dudley, of Chesterfield, New Hampshire, guarantee to pay James M. Beebe & Co., of Boston, for two thousand dollars worth of goods, delivered to Charles P. Dudley of Lowell, when he may call for them.

MOSES DUDLEY.

Chesterfield, Oct. 14, 1847."

VOL. XXVI.          17

Charles P. Dudley, in the year 1847, was a trader in Lowell, and prior to the execution of said agreement, had purchased two bills of goods of the plaintiffs, amounting to $1199,77, for which he was then indebted to them; and afterwards, and before the 1st of January, 1848, the plaintiffs delivered to him, at different times, goods amounting to $843,42.

The bills of the goods and the charges on the plaintiffs' books were made to Charles P. Dudley. The testimony in the case tended to show that the plaintiffs declined to sell the goods on the sole responsibility of Charles.

There was no evidence laid before the auditor to show that the defendant had any notice of the plaintiffs' claim against him until the commencement of this suit. The plaintiffs contended, however, that notice was given to the defendant in January, 1848, but the auditor did not consider the testimony as to this point to be admissible.

No part of the goods delivered to Charles have been paid for, he having failed in January, 1848.

Upon the hearing of the whole case, the auditor found that the plaintiffs ought to recover of the defendant the amount of the first items of charge in their specification, being.... ............................................$843,42
Interest on the same after six months, to March, 1853,  244,59

Making, in all,...............................1088,01

The last two items in the specification, the auditor did not allow, the goods having been delivered prior to the defendant's agreement.

The questions arising upon the auditor's report were transferred to this court for determination.

*Wheeler & Faulkner*, for the plaintiffs.

No notice or demand was necessary in this case. The writing executed by the defendant and delivered to the plaintiffs, was an original and absolute promise to pay a

sum certain. Nothing is said about any liability on the part of Charles P. Dudley, and not a word is used which tends to show that the contract of the defendant was collateral, except the word "guarantee," which, construed in its connexion with the rest of the instrument, evidently means neither more nor less than promise. *Union Bank of Louisiana* v. *Coster*, 1 Sand. Sup. Ct. Rep. 563; *Curtis* v. *Brown*, 2 Barb. Sup. Ct. Rep. 51; *Matthews* v. *Chrisman*, 12 S. & M. Rep. 595; *Breed* v. *Hillhouse*, 7 Ct. Rep. 523; *Derval* v. *Trask*, 12 Mass. Rep. 154; *Langdale & a.* v. *Parry*, 2 Dow. & Ry. 337; *Edge* v. *Frost*, 4 Dow. & Ry. 243.

2. Even if this instrument should be construed as a guaranty, no other notice and demand than were given and made in this case was necessary. The defendant was notified of the claim, and payment was demanded of and refused by him on the same day on which the writ was served.

It is only in case of an offer to guarantee, or where the extent to which the guarantor may eventually be made liable, is uncertain and indefinite, that any notice of the acceptance of the guaranty is necessary. *Allen* v. *Pike*, 5 Cush. Rep. 238; *Caton* v. *Shaw*, 2 Harr. & Gil. 13. In this case, the guaranty is absolute and unconditional, and the extent of the liability is fixed and determined.

Nor is there any inflexible, technical rule that notice of the amount of his liability, and demand of payment must be made on the guarantor, or he will be discharged. A careful examination of the American cases shows the rule to be that notice and demand, at any time before the commencement of the suit, is sufficient, unless it is made to appear that the guarantor has been prejudiced by the delay. *Babcock* v. *Bryant*, 12 Pick. 133; *Salisbury* v. *Hale*, 12 Pick. 416; *Mussey* v. *Rayner*, 22 Pick. 223; *Dole* v. *Young*, 24 Pick. 250.

In this case, the defendant has not been prejudiced by the delay of the plaintiffs. The plaintiffs were under no obliga-

tion to notify him before the failure, of Charles P. Dudley, as only $843,42 of the $2,000 worth of goods had been taken up, and since the failure, notice would have been of no benefit to the defendant, as Charles P. Dudley, has ever since been insolvent.

*Carlton*, with whom was *Cushing*, for the defendant.

The case shows that the goods were sold to Charles P. Dudley, and delivered to him; that the bills were made out in his name, and that the plaintiffs declined to sell on his sole responsibility.

The case further finds that the plaintiffs gave no notice to the defendant that they had sold any goods on the strength of his guaranty, although Charles P. Dudley failed as early as 1848.

The defendant contends that the writing was a continuing guaranty, and that he is not bound by it until he has notice of its acceptance. *Norton & a.* v. *Eastman*, 4 Greenl. Rep. 521; *Tuckerman & a.* v. *French*, 7 Greenl. Rep. 115; *Cremer* v. *Higginson*, 1 Mason 323; *Allen* v. *Pike*, 3 Cush. 238; *Mussey* v. *Rayner*, 22 Pick. 223; *Adams* v. *Jones*, 12 Peters 213.

EASTMAN, J.   There is some confusion in the books as to the precise nature and extent of a contract entered into by a guarantor.   The same undertaking, embraced in almost the same terms, has, by some jurisdictions, been declared to be absolute, while in others it is held to be collateral merely. And this by tribunals of high standing.   *Butler* v. *Wright*, 20 Johns. 367; *Oxford Bank* v. *Haynes*, 8 Pick. 423; *Sage* v. *Wilcox*, 6 Ct. Rep. 81; *Curtis* v. *Brown*, 2 Barb. Sup. Ct. Rep. 51.

The difficulty seems to be, not so much in deciding what the law is, when once the extent of the contract entered into is defined, as in settling what the contract is, whether collateral or absolute.

In the case of promissory notes, the liability of a guarantor is ordinarily greater than that of an indorser, and less than that of a surety. His position is between that of an indorser and surety, and his liabilities vary from both. And in a suit against a guarantor, his contract must be specially set forth in the declaration.

A guarantor warrants the solvency of his principal and the payment of the debt, in case of his default; while an indorser is answerable only upon a strict compliance with the law by the holder, whether the principal is solvent or not.

A surety is liable without notice, while a guarantor, in many cases, is discharged, unless notice be given him.

Where the undertaking to pay is absolute, notice to the guarantor is unnecessary. His liability is fixed without demand or notice. *Breed* v. *Hillhouse,* 7 Ct. Rep. 523; *Union Bank of Louisiana* v. *Coster,* 1 Sandf. Sup. Ct. Rep. 563; *Matthews* v. *Crisman,* 12 Smeade & Mar. 595; *Butler* v. *Wright,* 20 Johns. 367; 3 Kent's Com. 124; *Cooper* v. *Page,* 11 Shepl. 73; *Carson* v. *Hill,* 1 McMullan's (S. C.) Rep. 76.

Where the undertaking is collateral and not absolute, notice must be given within a reasonable time, or it must appear that the situation and circumstances of the parties are such that no injury has resulted to the guarantor for the want of notice. The object of notice is to let the guarantor know that he is relied upon for payment; and it should be given to him whenever it would be of any advantage to him to have it, that he may, if possible, secure himself against liability. *Oxford Bank* v. *Haynes,* 8 Pick. 423; *Cannon* v. *Gibbs,* 9 Serg. & Rawle 202; *Norton* v. *Eastman,* 4 Greenl. 521; *Babcock* v. *Bryant,* 12 Pick. 133; *Folmar* v. *Dole,* 9 Barr 83; *Cremer* v. *Higginson,* 1 Mason 323; *Howe* v. *Nichols,* 9 Shepl. 175; *Mussey* v. *Rayner,* 22 Pick. 223.

Where the party for whom the undertaking is made becomes insolvent, so that no advantage can arise to the guarantor by notice being given, notice is unnecessary. It must

appear that the neglect to give notice has produced some loss or prejudice to the guarantor, otherwise notice and demand before the action is brought is sufficient. Lord *Ellenborough*, in 8 East 242, says that guarantors insure the solvency of the principals, and, therefore, if the latter become bankrupt and notoriously insolvent, it is the same thing as if they were dead, and it is nugatory to go through the ceremony of making a demand upon them. *Salsbury* v. *Hale*, 12 Pick. 416; *Warrington* v. *Furber*, 8 East 242; *Bank* v. *Haynes*, 8 Pick. 423; *Phillips* v. *Astling*, 2 Taun. 206; 3 Kent's Com. 123; *Skofield* v. *Haley*, 9 Shepl. 164; *Rhett* v. *Poe*, 2 Howard's U. S. Rep. 457; *Peck* v. *Barney*, 13 Vt. Rep. 43.

Was the undertaking of this defendant absolute or collateral? It would seem to be plain by the latter clause of the contract, "when he may call for them," that the engagement related to goods that should be thereafter delivered; that the undertaking was to pay for future sales, and not for the past; and that, therefore, at the time the contract was made, nothing had been done upon which an absolute promise could operate,—nothing upon which an action, could then be supported. Again, no time is fixed in which the goods are to be delivered, which is usually an essential element to an absolute contract, and the designation of Charles P. Dudley as of Lowell, would at least indicate that he was not the mere agent of the defendant. These matters, coupled with the use of the term "guarantee," would seem to show, that judging from the instrument alone, the undertaking was only collateral. But when the facts disclosed by the auditor are also considered; that the goods were procured in different parcels; that the bills were made out to Charles P. Dudley, and that the charges upon the plaintiffs' books were also made to him, it would seem clear that the parties, or at least the plaintiffs, understood Charles P. Dudley to be the principal in the transaction, that the origi-

nal credit was given to him, and that the agreement of the defendant was only collateral.

In *Babcock* v. *Bryant*, 12 Pick. 133, the undertaking was " to be responsible and pay to the plaintiff for whatever goods have been or may be delivered to C. within one year." The plaintiff delivered goods to C. within the year, and took his negotiable note for the price. It was held that the undertaking of the defendant was collateral only, and that his liability as guarantor was not discharged by the plaintiff's taking C.'s note.

We think the undertaking, in this case, was collateral, and, consequently, reasonable notice of the amount furnished and of claim upon Moses Dudley therefor, should, under ordinary circumstances, have been given to him, in order to perfect his liability.

But notwithstanding the undertaking was collateral, and notwithstanding notice was not given, at least till the day on which the suit was commenced, yet, inasmuch as Charles P. Dudley failed in January, 1848, less than three months after the date of the guarantee, and before one half of the amount for which the guarantee was given was obtained, the plaintiffs are relieved from showing any special notice or any particular and special demand. Before the failure notice was unnecessary, and after it had taken place it could be of no service to the defendant. He has not, therefore, been prejudiced by want of notice, and notice and request, at any time before the commencement of the suit, would be sufficient.

Whether any notice of the plaintiffs' claim was given to the defendant before the commencement of the suit, does not distinctly appear. The auditor finds that no notice was given " until the commencement of the suit," and counsel differ as to the construction that shall be put upon this finding. The plaintiffs state that notice was given and demand made, and a refusal by the defendant on the day of the commencement of the suit, before the writ was served. But

this is not acceded to by the defendant, and the report must, therefore, be re-committed to ascertain this fact.

*Report re-committed.*